UNITED STATES DISTRICT COURT WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,              Case No. 1:19-CR-0025

v.                                             Hon. Gordon J. Quist
                                                U.S. District Court Judge

MUSE A. MUSE
MOHAMED S. HAJI
MOHAMUD A. MUSE, Defendants.

---

## RESPONSE TO COURT'S DIRECTIVE TO CONFER WITH COUNSEL

NOW COMES attorney James K. Champion, and states as follows:

On February 1, 2019, family representatives of the Defendants in this case met with and retained Counsel to defend them. The next morning, Counsel travelled to White Cloud, Michigan to visit the detained Defendants and obtain signed consent forms to substitution of Counsel. Counsel provided these forms to the respective appointed lawyers and requested that they execute and return them. To Counsel's astonishment, and for the first time in Counsel's career, the lawyers refused to withdraw when requested by their Clients. Moreover, attorney Mary Chartier actually claimed that her Client, Mohamed Haji, had not hired Counsel, despite the signed Consent form, and that if Counsel were to attempt to communicate with him, he could be in Violation of the Michigan Rules of Professional Conduct. See attached Exhibit 1.

During the next 10 days, as Counsel researched and reviewed the law and his options, Counsel continued to hear accounts from the family members, through their sons and brothers, of disparaging remarks made by their appointed attorneys regarding Counsel. They reported being

1

told that Mr. Champion was just going to charge their families a lot of money and that he had only handled five Federal cases. Ultimately, the appointed attorneys filed a Motion to Determine Representation. It is axiomatic that such a motion would not have been filed if, as attorney Mary Chartier had claimed, the Defendants did not wish to hire Counsel-the Counsel of their choosing.

On February 19, 2019 Counsel received Notice that he was ordered to appear in this Court on February 28, 2019 at 10 a.m. for a hearing to Determine Representation of the Defendants. Much was made of the fact by the appointed lawyers that Counsel had not yet filed an appearance in the case, when they knew full well that the reason was their refusal to honor the wishes of the Defendants and withdraw. It seems logical at this point to question their standing.

At the February 28th hearing, the Court asked questions of the United States Assistant Attorney, Clay West, Counsel, Defendants, and their attorneys. These questions revolved around a central question, which was " Does a conflict of interest actually exist that would prohibit Counsel from representing one, two, or all three of the Defendants?" Counsel answered that he did not believe so. Mr. West answered that he was not aware of one. The appointed lawyers seemed to suggest that there were many conflicts that they saw, yet, when pressed for specifics, simply referenced a 4-hour allegedly inculpatory statement by one of the Defendants.

At the conclusion of the hearing, the Court directed Counsel and the appointed lawyers to confer as to what conflicts might exist, and report back on or before March 7th, 2019. The following day, Counsel was invited to meet with the appointed lawyers in their office on March 6th. Counsel responded that such a late date would provide little time to respond, unaware that they only really had one potential conflict o hang their hat on. Counsel asked if they could all provide times on Monday or Tuesday when they might be available for individual phone conversations, or in the alternative, perhaps they could share their concerns in e-mails. The

2

appointed attorneys continually, over the next several days, refused to discuss their concerns in any other way than collectively in their office.

Finally, on the evening of Tuesday, March 5th 2019, the appointed attorneys once again refused to discuss the matter in any fashion other than a group meeting in their office. When Counsel implored one last time for them to state what their objections were, Mr. Zambon, speaking for the group, stated that " I don't know how to make it any clearer to you that one, or perhaps two, co-defendants have made inculpatory statements potentially implicating the co-defendants." See attached Exhibit 2. This was the same argument that had been made in open court. For a week Counsel sought over and over again, as this Court had directed, to learn what actual conflicts the attorneys were relying on in order to prohibit Counsel from representing the Defendants-- as per their wishes. It is important to note that Mr. West did not see a conflict that warranted taking a position in this matter. Either the statements do not constitute a conflict worthy of an objection, or the appointed attorneys, having had the case for little over a month, know far more about the Government's case than the Government does. Counsel suspects the former is more likely than the latter. Indeed, in Mr. Zambon's reponsee to the Court's directive, he finally agrees that the Government is in the best position to determine if any actual Conflicts exist. PageID 109. And the Government, by virtue of the fact that it has not taken a position in the matter, has spoken volumes.

In all criminal proceedings, the Sixth Ammendment to the Constitution of the United States entitles the accused to the Counsel "of ones's own choosing". *United States v. Laureano-Perez,* 797 F.3d 45,55 (1st Cir. 2015) . By signing the Consent to Substitution of Counsel forms, the Defendants made their choice. The appointed attorneys must withdraw. By refusing to do so, they have impeded the normal process, resulting in delay and distraction. Had they simply

3

executed the Consent forms and withdrawn, Counsel could then have filed his Appearance and proceeded to represent the Defendants. It was improper for the appointed attorneys to stand in the place of the Court and act as a unified wall to, in effect, bar Counsel from providing the representation that the Defendants hired him for.

Dated: March 7, 2019              */s/James K. Champion*
                                  Law Offices of James K. Champion, PLLC
                                  312 E. Fulton
                                  Grand Rapids, MI 49503
                                  (616) 233-3287
                                  jim@championlawoffice.com