UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:19-CR-00025 |
| Plaintiff, | |
| v. | Hon. Gordon J. Quist<br>United States District Judge |
| MUSE ABDIKADIR MUSE,<br>  a/k/a ALI ALMUHAJIR, | |
| Defendant. | |

## PLEA AGREEMENT

This constitutes the plea agreement between Muse Abdikadir Muse (hereinafter, "Defendant") and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1. **Defendant Agrees to Plead Guilty.** Defendant agrees to plead guilty to Count 1 of the Indictment. Count 1 charges Defendant with Conspiracy to Provide Material Support to a Designated Foreign Terrorist Organization in violation of 18 U.S.C. § 2339B(a)(1).

2. **Defendant Understands the Crime.** In order for Defendant to be guilty of violating 18 U.S.C. § 2339B(a)(1) as charged in Count 1 of the Indictment, the following must be true:

    a. Defendant conspired or agreed with one or more other individuals to knowingly provide material support or resources to a foreign terrorist organization;

    b. Defendant knew that the organization was a designated terrorist organization, or that the organization has engaged or engages in terrorist activity or terrorism; and

c. Defendant is a U.S. national or the offense occurred in whole or in part within the United States.

Defendant is pleading guilty because Defendant is guilty of the charge described above.

3. **Defendant Understands the Penalties.** The statutory maximum sentence the Court can impose for a violation of 18 U.S.C. § 2339B(a)(1) is the following: 20 years in prison; a fine of $250,000; a lifetime of supervised release; and a mandatory special assessment of $100. Defendant agrees to pay the special assessment at or before the time of sentencing unless Defendant affirmatively demonstrates to the Court that he lacks the ability to pay.

4. **Denaturalization.** Defendant understands that the conviction in this case may subject him to denaturalization if he is a naturalized or derivative United States citizen.

5. **Supervised Release Defined.** Supervised release is a period of time following any term of imprisonment during which Defendant will be subject to various restrictions and requirements. Defendant understands that if he violates one or more of the conditions of any supervised release imposed, he may be returned to prison for all or part of the term of supervised release, which could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

6. **Factual Basis of Guilt.** Defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing:

> Beginning in or about January 2017, and continuing through on or about January 21, 2019, within the Western District of Michigan, Southern Division, and elsewhere, Defendant conspired and agreed with his co-defendants Mohamed Salat Haji ("Haji") and Mohamud Abdikadir Muse ("Muse") to provide material support and resources, as that term is defined in Title 18, United States Code, Section 2339A(b), including personnel, to the Islamic State of Iraq and al-Sham (also known as the Islamic State of Iraq and the

2

Levant, Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Dawla al Islamiya, ISIL, and ISIS) (collectively "ISIS"). Defendant was aware that ISIS is a designated foreign terrorist organization, that ISIS has engaged or engages in terrorist activity, and that ISIS has engaged or engages in terrorism.

Throughout the period of the conspiracy, Defendant participated in numerous discussions with his co-defendants in the Western District of Michigan during which they discussed traveling to Somalia to join ISIS. In furtherance of the conspiracy, Defendant, Haji, and Muse all adopted fighter ("kunya") aliases by which they would be known when fighting in Somalia for ISIS. Defendant chose the kunya alias "Ali Almuhajir" and created a Facebook account in that name on or about November 11, 2018. Muse chose the kunya alias "Abu Osama Almuhajir" and Defendant created a Facebook account in that name on Muse's behalf or about November 13, 2018. Haji chose the kunya alias "Salamujahid Almuhajir" and Defendant created a Facebook account in that name on Haji's behalf on or about November 18, 2018.

On or about October 30, 2018, Defendant sent to co-defendant Haji the Arabic language text of the "bayah" or pledge required to join ISIS. Haji found an Arabic speaker to record the bayah in a video for Defendant, Haji, and Muse to use as a sample to record their own bayah videos, and Haji sent the bayah sample back to Defendant on October 30, 2018. Defendant recorded his own bayah video on November 7, 2018; Muse recorded his bayah video on November 15, 2018; and Haji recorded his bayah video on November 19, 2018. Defendant, Haji, and Muse submitted their bayah videos to individuals they believed represented ISIS.

On or about December 14, 2018, Defendant and Haji traveled from Lansing, Michigan to Benton Harbor, Michigan to meet an individual who went by the ISIS kunya "Rabbil Almuhajir" and whom Defendant and Haji believed to be a potential ISIS fighter recruit and traveler to Somalia. While in Benton Harbor with Rabbil Almuhajir, Defendant and Haji recorded a video of a bayah pledge made by Rabbil Almuhajir and sent the video to an individual they believed to be an ISIS fighter, followed by two additional video recordings sent to the same ISIS fighter regarding their recruitment accomplishment.

From at least November 2018, Defendant discussed with co-defendants Haji and Muse Defendant's need to obtain a U.S. passport in support of his travel to Somalia to join ISIS. In or about December 2018, Defendant submitted an application in Defendant's name for a U.S. passport. According to U.S. Government records, Defendant was issued a U.S. passport on or about December 19, 2018. At some point between December 19, 2018 and January 2, 2019, Defendant turned over his passport to his parents at their request and Defendant's father later refused to return the passport to Defendant. Defendant then completed an application for a replacement U.S. passport on January 2, 2019 in Ingham County, Michigan. In that U.S. passport application, Defendant willfully and knowingly made a false statement in that Defendant attested that he had accidentally thrown out his prior passport issued on or about December 19, 2018,

3

which statement Defendant then and there knew was false.

Between December 2018 and January 2019, Defendant coordinated with an individual he believed to be a Somali ISIS fighter to wire Defendant $1,200 in $300 increments through the MoneyGram currency transfer service. Defendant picked up $300 from MoneyGram on January 4, 2019; Haji picked up $300 from MoneyGram on January 5, 2019 and passed it to Defendant; Muse picked up $300 from MoneyGram on January 5, 2019 and passed it to Defendant; and the purported wife of a fourth individual believed by Defendant to be another potential ISIS recruit picked up $300 from MoneyGram on January 6, 2019 and sent another MoneyGram transfer of $300 to Defendant on January 6, 2019. On January 7, 2019, Defendant used those MoneyGram funds and his own funds to purchase tickets for a series of airline flights, the first of which departed on January 21, 2019 from Grand Rapids, Michigan. Defendant's final destination was Mogadishu, Somalia, where he believed he would meet an ISIS representative.

On January 21, 2019, Defendant, Haji, and Muse all traveled by automobile from Lansing, Michigan to the Gerald R. Ford International Airport in Grand Rapids, Michigan to attempt to provide material support, including personnel, to a foreign terrorist organization, namely ISIS. Haji and Muse traveled with Defendant to transport him to the airport and see him off. Muse drove the other two and parked the vehicle in the short-term parking lot at the airport. Defendant, Muse, and Haji all entered the terminal together. Defendant proceeded to the airline ticket counter, obtained a boarding pass for his scheduled flight, checked one bag, and proceeded to the Transportation Security Administration ("TSA") security checkpoint. As Defendant was completing the TSA security process, he was arrested in the airport terminal by law enforcement officers. Shortly thereafter, Haji and Muse were arrested in the airport terminal by law enforcement officers.

7. <u>Cooperation Agreement.</u>   Defendant agrees to fully cooperate with the U.S. Attorney's Office, and any other law enforcement agency in their investigation of the charges contained in this Indictment as well as the investigation of crimes over which they have actual or apparent jurisdiction. Defendant's cooperation will consist of all steps needed to uncover and prosecute such crimes, including, but not limited to, providing investigators with a full, complete and truthful statement concerning Defendant's knowledge of any and all criminal activity of which he is aware; truthfully answering investigators' questions; meeting with prosecutors before testifying; truthfully testifying before grand juries and in any court proceedings; and

providing all relevant tangible evidence in Defendant's possession or under Defendant's control, including, but not limited to, objects, documents, and photographs. Defendant's obligation to cooperate under this paragraph is an affirmative one and includes the obligation to voluntarily come forward with any and all information which Defendant should reasonably know will assist in the investigation of other criminal activity. Defendant will not commit any criminal offense during the course of his cooperation with the United States. Defendant will submit to polygraph examination(s) upon request. Defendant's obligation under this paragraph is a continuing one, and shall continue after sentencing until all investigations and prosecutions in which Defendant's cooperation is deemed relevant by the U.S. Attorney's Office have been completed.

8. Protection for Proffered/Cooperation Statements. The U.S. Attorney's Office agrees that information provided by Defendant through Defendant's proffer(s), and any information provided pursuant to the Defendant's promise to cooperate as described in this agreement, will not be used by the government to enhance the Defendant's sentence, in accordance with Sentencing Guidelines § 1B1.8, and according to the terms of the written agreement entered into between the parties immediately prior to the proffer(s). It is expressly understood, however, that such information may be used by the Government at sentencing if the Defendant takes a position at sentencing that contradicts information provided by the Defendant pursuant to this agreement or any proffer agreement.

9. The United States Attorney's Office Agrees:

   a. Dismissal of Other Counts. The U.S. Attorney's Office agrees to move to dismiss the remaining counts (Counts 2 and 3) of the Indictment against Defendant at the time of sentencing.

5

  b.  <u>Acceptance of Responsibility.</u> The U.S. Attorney's Office agrees not to oppose Defendant's request for a two-level reduction of his offense level for acceptance of responsibility under Section 3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office reserves the right to object to Defendant's request if it subsequently learns of conduct by Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level reduction as provided herein, the Government will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3E1.1(b).

  c.  <u>Non-Prosecution Agreement.</u> The U.S. Attorney's Office for the Western District of Michigan agrees not to bring additional criminal charges against Defendant in the Western District of Michigan arising out of the conspiracy to provide material support to a designated Foreign Terrorist Organization (ISIS); his attempt to provide material support to a designated Foreign Terrorist Organization (ISIS); and his false statement in a U.S. passport application, provided that all criminal conduct is disclosed to the government by Defendant or his attorney prior to the date of this agreement. Defendant understands that the U.S. Attorney's Office is free to prosecute Defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. This promise of non-prosecution shall not include crimes of violence, if any, or any criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371).

  d.  <u>Possible Reduction For Substantial Assistance.</u> The U.S. Attorney's Office will decide whether to file a motion for departure or reduction of sentence pursuant to Sentencing Guidelines § 5K1.1 and/or Rule 35(b) of the Federal Rules of Criminal Procedure.

Defendant fully understands that such a motion may be made pursuant to law if, and only if, Defendant fully cooperates with the Government and materially and substantially assists the Government in the investigation or prosecution of others. The determinations of whether Defendant has provided substantial assistance to the United States, or to designated state or local law enforcement authorities, will be made in the sole discretion of the U.S. Attorney's Office. Defendant fully understands that this paragraph is not a promise by the Government to file a motion for departure or to reduce a sentence. Additionally, Defendant understands that, even if such a motion were filed, the Court has complete discretion to grant or deny the motion. Furthermore, if the Court were to grant the motion, the Court – not the Government – would decide how much of a departure or sentence reduction Defendant receives based upon the nature and extent of Defendant's assistance. Defendant acknowledges and agrees that Defendant may not appeal the Court's exercise of its discretion in granting or denying a motion for departure or reduction of sentence, if such a motion is made.

10. **The Sentencing Guidelines.** Defendant understands that, although the United States Sentencing Guidelines are not mandatory, the Court must consult the Guidelines and take them into account when sentencing Defendant. Defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. Defendant understands that Defendant and Defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed. Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range,

subject to the statutory maximum penalties described elsewhere in this Agreement. Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

11. <u>Non-Binding Stipulations Regarding Guideline Factors and Supervised Release</u>. The Defendant and the U.S. Attorney's Office agree and stipulate to the following advisory Sentencing Guideline factors:

    a.    The applicable Guideline section is USSG § 2M5.3(a), which provides a base offense level of 26.

    b.    The facts of this case support no specific offense characteristics or cross references in USSG § 2M5.3(b) or (c).

    c.    Pursuant to USSG § 3A1.4, the offense is a felony that involved, or was intended to promote, a federal crime of terrorism (a 12 level increase) and Defendant's criminal history category is VI.

    d.    Pursuant to 18 U.S.C. § 3583(j), the facts of this case support a lifetime term of supervised release.

Defendant and the U.S. Attorney's Office each reserve the right to argue that additional specific offense characteristics, adjustments and departures are appropriate. Defendant understands that neither the United States Probation Office nor the Court is bound by any stipulation in this agreement, and that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. Both Defendant and the U.S. Attorney's Office are free to supplement the facts stipulated to in this agreement by supplying relevant information to the United States Probation Office and the Court, and to correct any and

all factual misstatements relating to the calculation of the sentence. Defendant understands that if the Court finds facts or reaches conclusions different from those in any stipulation contained in this agreement, he cannot, for that reason alone, withdraw his guilty plea.

12. <u>Waiver of Constitutional Rights</u>. By pleading guilty, Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of Defendant's guilty plea, there will be no trial. At any trial, whether by jury or by the Court, Defendant would have had the following rights:

  a. The right to the assistance of counsel, including, if Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent Defendant.

  b. The right to be presumed innocent and to have the burden of proof placed on the Government to prove Defendant guilty beyond a reasonable doubt.

  c. The right to confront and cross-examine witnesses against Defendant.

  d. The right, if Defendant wished, to testify on Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

  e. The right not to be compelled to testify, and, if Defendant chose not to testify or present evidence, to have that choice not be used against Defendant.

By pleading guilty, Defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could have been filed.

13. <u>Waiver of Right to Appeal or Collaterally Attack Conviction and Sentence</u>.

  a. <u>Waiver</u>. In exchange for the promises made by the government in

9

entering this plea agreement, Defendant waives all rights to appeal or collaterally attack Defendant's conviction, sentence, or any other matter relating to this prosecution, except as listed below.

      b.    <u>Exceptions</u>. Defendant may appeal or seek collateral relief to raise a claim, if otherwise permitted by law in such a proceeding, on the following grounds:

    1) Defendant's sentence on any count of conviction exceeded the statutory maximum for that count;

    2) Defendant's sentence was based on an unconstitutional factor, such as race, religion, national origin, or gender;

    3) the district court incorrectly determined the Sentencing Guidelines range, if Defendant objected at sentencing on that basis;

    4) the guilty plea was involuntary or unknowing;

    5) an attorney who represented Defendant during the course of this criminal case provided ineffective assistance of counsel.

If Defendant appeals or seeks collateral relief, Defendant may not present any issue in the proceeding other than those described in this subparagraph.

    14.    <u>Waiver of FOIA and Privacy Act Rights</u>. Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

15. <u>Hyde Waiver</u>. The Defendant acknowledges, by his voluntary admission of guilt, that the position of the U.S. Attorney's Office in this case is not vexatious, frivolous, or in bad faith, and he hereby disclaims and waives any right to make any claim for attorney fees.

16. <u>The Court Is Not a Party to This Agreement</u>. Defendant understands that the Court is not a party to this Plea Agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed. Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, Defendant cannot, for that reason, withdraw his guilty plea, and he will remain bound to fulfill all his obligations under this Plea Agreement. Defendant understands that no one – not the prosecutor, Defendant's attorney, or the Court – can make a binding prediction or promise regarding the sentence Defendant will receive, except that it will be within the statutory maximum.

17. <u>This Agreement is Limited to the Parties</u>. This Plea Agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authority. This Agreement applies only to crimes committed by Defendant. This Plea Agreement does not apply to any pending forfeiture proceedings, and shall not preclude any past, present, or future forfeiture or civil actions.

18. <u>Consequences of Breach</u>. If Defendant breaches any provision of this Plea Agreement, including any promise of cooperation, whether before or after sentencing, the United States shall have the right to terminate this Agreement, or deny any or all benefits to which Defendant would otherwise be entitled under the terms of this Agreement. In the event that the

United States elects to terminate this Plea Agreement, the Agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this Agreement, as though no Agreement ever existed. In such an event, Defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant. Defendant further agrees to waive and forever give up his right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one year of the breach that gives rise to the termination of this Plea Agreement.

19.   **This Is the Complete Agreement.**   This Plea Agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties. No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

|  |  |
|---|---|
| _7 Jan 2020_<br>Date | ANDREW BYERLY BIRGE<br>United States Attorney<br><br>_/s/_<br>CLAY M. WEST<br>CHRISTOPHER M. O'CONNOR<br>Assistant United States Attorneys |

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

|  |  |
|---|---|
| _01-07-2020_<br>Date | _/s/ Muse Muse_<br>MUSE ABDIKADIR MUSE<br>Defendant |

I am Muse Abdikadir Muse's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

|  |  |
|---|---|
| _1-7-2020_<br>Date | _/s/_<br>SANFORD ALLEN SCHULMAN<br>SOLOMON M. RADNER<br>Attorneys for Defendant |

13