UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                         No. 1:19-CR-025-1

    v.                                    Hon. Robert J. Jonker
                                                 Chief U.S. District Judge

MUSE ABDIKADIR MUSE,
  a/k/a ALI ALMUHAJIR,

        Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Muse Abdikadir Muse ("Defendant") is a 22-year-old Lansing resident who pledged his allegiance to the foreign terrorist organization Islamic State of Iraq and al-Sham ("ISIS"), attempted to recruit another person to leave the United States and join ISIS overseas, helped his brother (co-defendant Mohamud Muse) and cousin (co-defendant Mohamed Haji) pledge allegiance to ISIS, and attempted to travel to Somalia to join and wage jihad for ISIS.  Law enforcement thwarted Defendant's attempt to join ISIS, arresting him as he tried to pass through the TSA checkpoint at Gerald R. Ford International Airport after checking in for the first of several flights to Somalia.  Defendant chose to devote himself to a terrorist organization dedicated to the murder of Americans and other "infidels" and his commitment to its mission of terror, murder, and hate was absolute.  He wrote about committing an attack on infidels in the United States if he was unable to join ISIS and was prepared to die for ISIS and its misguided cause.

To adequately protect the public and impose sufficient punishment to deter future acts of terrorism, the Government seeks a prison sentence of at least 178 months and a lifetime of supervised release.  A nearly 15-year sentence would reflect the extremely serious nature of Defendant's terrorism offense, provide just punishment for his conduct, deter and prevent him from resuming his activities in support of radical Islamic terrorist ideology, and deter others from seeking to join and serve violent terrorist groups such as ISIS.

## BACKGROUND

The following is a summary of the key events pertaining to Defendant's offense conduct.  Between January 2017 and January 21, 2019, Defendant conspired with his co-defendants Mohamed Salat Haji ("Haji") and Mohamud Abdikadir Muse ("Muse") to provide material support and resources, including personnel, to ISIS.  Defendant knew that ISIS was a designated foreign terrorist organization and engaged in terrorist activity.

Throughout the conspiracy, Defendant participated in numerous conversations with his co-defendants about the virtues of ISIS and traveling to Somalia to join ISIS, which is referred to as making "hijra."  Defendant, Haji, and Muse all adopted fighter ("kunya") aliases by which they would be known when fighting in Somalia for ISIS.  Defendant chose the kunya alias "Ali Almuhajir" and created a Facebook account in that name.  He sent Haji the Arabic text of the "bayah" or pledge required to join ISIS.  Haji found an Arabic speaker to record the bayah in a video for all three men to use as a sample to record their own bayah

videos. Defendant recorded his own bayah video in November 2018 and all three submitted their videos to individuals they believed represented ISIS.

In December 2018, Defendant and Haji traveled from Lansing, Michigan to Benton Harbor, Michigan to meet an individual who went by the ISIS kunya "Rabbil Almuhajir" and whom Defendant and Haji believed was a potential ISIS fighter recruit and traveler to Somalia. While in Benton Harbor with Rabbil Almuhajir, Defendant and Haji recorded a video of a bayah pledge made by Rabbil Almuhajir and sent the video to an individual they believed to be an ISIS fighter. They sent two additional video recordings to the same ISIS fighter regarding their recruitment accomplishment.

Defendant discussed with Haji and Muse his need to obtain a U.S. passport to travel to Somalia to join ISIS. In December 2018, Defendant submitted an application for, and later obtained, a U.S. passport. Shortly thereafter, he turned over his passport to his parents at their request and his father refused to return the passport to him. Defendant applied for a replacement U.S. passport in January 2019, falsely stating that he had accidentally thrown out his prior passport.

Between December 2018 and January 2019, Defendant coordinated with an individual he believed to be a Somali ISIS fighter to receive $1,200 in $300 increments through the MoneyGram currency transfer service. Defendant picked up $300 from MoneyGram on January 4, 2019, and arranged for Haji and Muse to each pick up $300 from MoneyGram on January 5, 2019, and pass it to Muse. Additionally, Muse accepted another $300 from someone he believed was the wife of a potential ISIS recruit. On January 7, 2019, Defendant used those MoneyGram

3

funds and some of his own funds to purchase tickets for a series of airline flights, the first of which departed on January 21, 2019 from Grand Rapids, Michigan. Defendant's final destination was Mogadishu, Somalia, where he believed he would meet an ISIS representative.

On January 21, 2019, Defendant, Haji, and Muse all traveled by automobile from Lansing to the Gerald R. Ford International Airport in Grand Rapids to attempt to help Defendant join ISIS in Somalia. Muse drove the other two and parked the vehicle in the short-term lot. Defendant, Muse, and Haji all entered the terminal together. Defendant proceeded to the airline ticket counter, obtained a boarding pass for his scheduled flight, checked one bag, and proceeded to the TSA security checkpoint. As Defendant was completing the TSA security process, he was arrested in the airport terminal by the FBI. Shortly thereafter, Haji and Muse were arrested in the airport terminal.

## **DISCUSSION**

On January 7, 2020, Defendant pleaded guilty to conspiring to provide material support to the designated foreign terrorist organization ISIS pursuant to a plea agreement with the Government (R.96: Plea Agrm't, PageID.650-662). Under the terms of the Plea Agreement, the parties stipulated to application of the terrorism enhancement in USSG § 3A1.4 and a lifetime term of supervised release.

(*Id.*, PageID.657.) The statutory maximum sentence of imprisonment this Court may impose is 20 years.[1]

## I. The Advisory Guideline Sentence Before Application of the Government's Substantial Assistance Motion is 240 Months of Imprisonment.

The United States has no objection to the advisory federal Sentencing Guideline calculations in the revised presentence report ("PSR"), filed on July 30, 2021. The Guidelines call for a 240-month prison sentence (the statutory maximum) and up to a lifetime of supervised release.

The offense level is calculated as follows:

- The Guideline that applies to a violation of 18 U.S.C. § 2339B is USSG § 2M5.3(a), which yields a base offense level of 26. (PSR, ¶ 81.)

- Pursuant to USSG § 3A1.4(a) because the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, 12 levels are added. The adjusted offense level for Count 1 therefore is 38. (PSR, ¶¶ 83, 86.)

- Assuming Defendant continues to demonstrate acceptance of responsibility prior to the imposition of sentence, *see* USSG § 3E1.1(a), and because he timely notified authorities of his intention to plead guilty, *see id.* § 3E1.1(b), the offense level is decreased by three levels. (PSR ¶¶ 88-89.)

- The total offense level is 35. (*Id.* ¶ 90.)

Defendant does not have any known criminal convictions. (*Id.* ¶ 94.) Because the offense involved a federal crime of terrorism, the applicable criminal history category is VI, pursuant to USSG § 3A1.4(b). (*Id.* ¶ 95.) A total offense level of 35 and a criminal history category of VI result in a Guidelines range of 292 to 365

---

[1] In 2015, Congress increased the statutory maximum penalty for violating Section 2339B from 15 years to 20 years in prison, which expresses the legislature's view on the severity of this offense and the need to adequately punish those who commit it.

5

months' imprisonment. However, the statutory maximum term of imprisonment for a conviction on Count 1 is 20 years in prison. When the statutory maximum sentence is less than the minimum of the applicable Guideline range, the maximum sentence is the Guideline sentence. *See* USSG § 5G1.1(a). Accordingly, the advisory Guideline sentence (before consideration of the Government's motion for downward departure) is 240 months in federal prison.

By separate motion, the Government has moved for a 62-month downward departure pursuant to USSG § 5K1.1 to reflect Defendant's substantial assistance in the investigation and prosecution of another person who has committed an offense. That is the equivalent of a three-level departure. If this Court grants the motion and applies the Government's recommended departure, the final advisory Guideline sentence is 178 months.

## II. The Statutory Sentencing Factors Call for a Sentence of at Least 178 Months of Imprisonment.

### A. The Nature and Seriousness of Defendant's Conduct and the Need for Just Punishment Warrant a Substantial Custodial Sentence.

The indisputably serious nature of Defendant's conduct, and the need to impose just punishment, weigh decidedly in favor of a custodial sentence of at least 178 months. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A). Defendant, a naturalized U.S. citizen born in Kenya, arrived in the United States as a minor with his family as refugees from Somalia. Nonetheless, Defendant chose to devote himself to a brutally violent terrorist group that is dedicated to murdering U.S. citizens and attacking U.S. interests here and abroad. Defendant submitted bayah videos for himself, his cousin Mohamed Haji, and his brother Mohamud Muse, and attempted

to recruit another person (an undercover law enforcement officer) to submit a bayah video and travel with him overseas to join and fight for ISIS. Finally, Defendant planned and prepared for his own voyage to Somalia, including making a false statement in a U.S. passport application and aggregating wire transfers to fund his plane ticket. The FBI's investigative efforts prevented him from joining ISIS and furthering its deadly and destructive mission.

As the facts set forth above and in the PSR make clear, Defendant was fervently devoted to ISIS's violent ideology, and was willing to die for ISIS. For example:

**1. Defendant's Statement at the Time of Arrest.**

Immediately following his arrest on January 21, 2019, Defendant adopted a handwritten statement prepared for him by an FBI special agent that summarized his interest in ISIS and end goal regarding his support of ISIS. In part, Defendant admitted that he "wanted to join ISIS in Somalia so I wouldn't have to do an attack in the United States. I would rather live with ISIS in Somalia than in the United States because of my beliefs."

> WHEN I WAS IN HIGH SCHOOL I BEGAN RESEARCHING ISIS, OR DAWLA. ABOUT THREE MONTHS AGO I BEGAN TALKING TO AN ISIS RECRUITER. I WANTED TO JOIN ISIS IN SOMALIA SO I WOULDN'T HAVE TO DO AN ATTACK IN THE UNITED STATES. I WOULD RATHER LIVE WITH ISIS IN SOMALIA THAN IN THE UNITED STATES BECAUSE OF MY BELIEFS.

(Sent. Ex. 1.)

### 2. Defendant and Haji Celebrated a Vehicle Attack in New York.

On November 1, 2017, Defendant sent Haji an image of the deadly truck attack in New York City that occurred on October 31, 2017:



Haji replied, "Real civil war" and Defendant responded that if this did not wake the people up nothing would. Haji responded, "Yeahh I'm ready inshAllah[2] … This is a call for hijra.[3] We can't live here I'm trynna plan for hijra now." (Sent. Ex. 2.)[4]

---

[2] *InshAllah/Inshallah* means God willing; if God wills it.
[3] *Hijra*, as used by the defendants and other extremists, refers to a foreign fighter's migration from his country of origin to join and fight in a terrorist-held area.
[4] Certain Facebook messenger records appear in reverse chronological order as reflected in the UTC time stamps.

**3. Defendant and Haji Discussed Hijra and Dawlah.[5]**

On February 1, 2018, and on many other occasions, Defendant and Haji (who used the Facebook alias "Ibrahim Mohamed Salat") communicated about leaving the United States to fight for ISIS. On February 1, Defendant noted in a Facebook message to Haji, "Little by little bro and soon will be in dawlah." Haji replied, "inshaAllah 100%" and "Out of here" and "Hijra." (Sent. Ex. 3.)

**4. Defendant and Haji Monitored and Discussed New ISIS Videos.**

On March 1, 2018, and at various other times during the conspiracy, Defendant and Haji communicated about videos ISIS was posting on the Internet. On this particular occasion, Haji noted that, "I'm still supporting the state," to which Defendant replied, "same here." Haji indicated that ISIS has new videos, and Defendant commented, "seen them." Defendant and Haji proceeded to discuss ISIS opening new caliphates, with Haji highlighting Somalia as a new area for ISIS expansion and making headquarters in Al-Shabab territory. (Sent. Ex. 4.)

**5. Defendant proclaimed: "I'm a Terrorist."**

On March 21, 2018, Defendant sent a cell phone text message to a relative in which he proclaimed: "I'm a terrorist . . . . I'm going to Somalia inshaalah [sic]." (Sent. Ex. 5.)[6]

---

[5] *Dawla/Dawlah/Dowla* is the Islamic State of Iraq and al-Sham (ISIS).
[6] The relative's phone number, which appears in both the "outgoing" and "incoming" rows in the extraction report, has been redacted. As with certain Facebook records, the conversation appears in reverse chronological order.

### 6. Defendant Discussed Jihad Training on "Kuffar" Infidels.

On March 28, 2018, and several other times during the conspiracy, Haji and Defendant communicated on Facebook about killing "kuffar."[7] Haji sent a photograph of a slaughtered goat to Defendant and wrote, "Yeahh next time I want to catch kuffar and do my jihad training on them" and "That will be in Dowla" followed by "inshaAllah." Defendant responded with, "Hahaha inshaalah." (Sent. Ex. 6.)

### 7. Defendant and Haji Discussed ISIS Videos and Joining ISIS.

Defendant and Haji exchanged messages on Facebook glorifying and celebrating ISIS beheading videos on April 28 and 29, 2018. Defendant messaged Haji on April 28, 2018, telling Haji that "dawlah has a new video." Haji replied "I'm at work now I will enjoy it later." The next day, Haji followed up with Defendant, "I saw them dowla videos are very hot and alhamdullillah[8] we need more of those very aggressive and making you want to be in them and getting victory inshaAllah." Defendant responded, "your absolutely right, seeing those heads getting cut off heals the hearts wallahi[9] and makes me want to be with them more may allah make us steadfast upon this manhaj until we are in the ranks of the Khilafah[10] and until we die." (Sent. Ex. 7.)

---

[7] *Kuffar* refers to individuals who do not believe in radical Islamic extremism.
[8] *Alhamdulillah* means Praise God.
[9] *Wallahi* means I swear to God.
[10] *Khilafah* means a caliphate, an Islamic state.

10

### 8. Defendant and Haji Wanted the "Kuffar" Dead.

On July 5, 2018, in response to a photograph regarding the martyrdom of ISIS leader Abu Bakr al-Baghdadi's son in an anti-Syrian operation, Haji replied, "Kuffar I want to kill one inshaAllah one day" and "my days are coming I want a lot of this kuffar dead." Defendant responded, "Same here akhi[11]" and "May Allah make for us the way." Haji also wrote, "I wish Allah could bless me with 1000 kids for dowla wallahi I will want them in there." Defendant responded: "And Inshallah it will be us and our children soon." (Sent. Ex. 8.)

### 9. Defendant Advocated for a Domestic Attack to Support ISIS.

On August 17, 2018, Defendant and Haji exchanged more messages about killing people who do not share their extremist religious views. As part of the exchange, Defendant wrote the following to Haji: "Hijrah is the only think [sic] that can save us unless we do an istishadi[12] operation on these kuffar."

```
Author  Ibrahim Mohamed Salat (100001566575469)
Sent    2018-08-17 04:05:46 UTC
Body    Wallahi Allahu akbarr these munafiqs

Author  Muse Muse (100005073430379)
Sent    2018-08-17 04:04:41 UTC
Body    Hijrah is the only think that can save us unless we do an istishadi
        operation on these kuffar

Author  Ibrahim Mohamed Salat (100001566575469)
Sent    2018-08-17 04:03:18 UTC
Body    Yes that's true but it's crazy how things are changing slow very
        slow little by little akhii
```

(Sent. Ex. 9.) This exchange demonstrates that Defendant believed that he had two choices: travel to join ISIS or die a heroic death in the name of ISIS by committing

---

[11] *Akhi* means brother.
[12] *Istishad/Istishadi* means martyrdom; a heroic death.

11

a martyrdom operation against the non-believers.

**10. Defendant Wanted to Run Down Infidels with a Vehicle.**

Consistent with Defendant's interest in conducting an "istishadi operation," on August 31, 2018, Haji and Defendant celebrated Defendant's recent acquisition of a Michigan driver's license. Haji began, "You're a driver now" and "mashaAllah[13] that's good so you can drive that stashahadi [sic] car right." Defendant responded, "Yes Inshallah." Haji replied, "On this kufarr" and "Wallahi I'm ready to meet Allah." Defendant in turn stated "bro I've been thinking about getting a rifle and something" and "I'm starting to entertain these thoughts." Haji responded, "Hahahhee easy inshaAllah lets jus go to dowla together and do our things there here is jus only us so the bigger the better."

In response to Defendant talking about "going to Somalia right now" but being careful of being watched on Facebook, Haji replied, "Yes they are they are [sic] tightening the web up," "they read all our stuff," and "They even track us." Defendant responded, "I'm not surprised lakini [but] I would be pissed if I tried to Somali and they put me on the no fly list," and **"Then it would be jihad on their land."** (emphasis added). Haji laughed, told Defendant to "move slowly," and noted "InshaAllah they will jus [sic] know a car pass by for istashahadi operation." (Sent. Ex. 10.)

**11. Defendant Planned to Invade the "Kuffar's" Land.**

On November 4, 2018, Defendant advised Haji that the war against "kuffar" would not end until their lands were invaded. (Sent. Ex. 11.)

---

[13] *MashAllah/MashaAllah* means it was God's will.

### 12. Defendant Planned Martyrdom Over Jail.

On November 11, 2018, Defendant advised an individual whom he believed to be an ISIS fighter in Somalia that "I've come this far I'm not letting the kuffar stop me now, wallahi I never go to jail, it's either hijrah or shahadah."[14] (Sent. Ex. 12.)

In short, Defendant was fully committed to advancing ISIS's mission of violence, death, and destruction, either overseas or in the United States. That Defendant did not succeed in actually joining and materially supporting ISIS overseas does not ameliorate his expressed intent and firmly held desire to do so and to commit murderous violence in the name of ISIS. There is no doubt that Defendant fully intended to carry out his mission. Indeed, he was arrested while navigating the TSA security checkpoint after checking in for a flight itinerary with a final destination of Somalia where he believed he was joining ISIS in the fight. The fact that law enforcement was able to thwart Defendant and prevent an American citizen from joining ISIS is a testament to the efforts and diligence of the FBI, not a mitigating factor for Defendant.

### B. A Custodial Sentence of at Least 178 Months is Necessary to Protect the Public from Further Terrorism Crimes.

The need to protect the public from further crimes of this defendant is a paramount consideration here, and strongly supports imposition of a custodial sentence of at least 178 months. *See* 18 U.S.C. § 3553(a)(2)(C). Terrorism crimes carry a higher risk of recidivism and rehabilitation of terrorism defendants like Defendant is difficult. *United States v. Meskini*, 319 F.3d 88, 91-92 (2d Cir. 2003)

---

[14] *Shahadah* refers to martyrdom.

13

(noting the link between the "difficulty of deterring and rehabilitating" terrorism defendants and the conclusion that "terrorists and their supporters should be incapacitated for a longer period of time"). Defendant's absolute commitment to ISIS and the radical Islamist terrorist theology that it espouses, his willingness to leave his life in this country forever and serve and die for ISIS, and his aspiration to commit the ultimate sacrifice — to martyr himself for ISIS and its cause, including in a domestic martyrdom attack — firmly support the singular conclusion that Defendant should be incarcerated for at least 178 months.

Defendant is still a young man at 22 years of age and fully capable of resuming support for ISIS and radical Islamic theology. His conduct demonstrates that there is every reason to believe that he may seek to resume his support for ISIS or another group espousing anti-American terrorist ideology. And the ISIS threat remains. The 2021 Annual Threat Assessment of the U.S. Intelligence Community indicates that "ISIS and al-Qaeda remain the greatest Sunni terrorist threats to U.S. interests overseas; they also seek to conduct attacks inside the United States. . . . We see this lone-actor threat manifested both within homegrown violent extremists (HVEs), who are inspired by al-Qaida and ISIS . . . ." *See* Office of the Director of National Intelligence, "Annual Threat Assessment of the U.S. Intelligence Community," April 9, 2021.[15] The need to deter and prevent Defendant from resuming his support for ISIS overwhelmingly militates in favor of a significant custodial sentence.

---

[15] Available at https://www.dni.gov/files/ODNI/documents/assessments/ATA-2021-Unclassified-Report.pdf.

A period of lifetime supervised release also is called for in this case. Lifetime supervised release is needed in order to adequately protect the public from this ISIS supporter who casually chatted about running down victims in a vehicle similar to the 2017 truck attack in New York City. While the Government earnestly hopes Defendant will be rehabilitated and renounce his commitment to wage violent jihad, the possibility of his permanent rehabilitation will be enhanced by a requirement of lifetime supervised release where his conduct and treatment can be closely monitored.

### C. A Sentence of at Least 178 Months Will Avoid Creating Unwarranted Sentence Disparities.

Across the country, terrorism defendants who have attempted to travel, successfully traveled, or assisted another person in traveling to join and serve ISIS or other terrorist organizations have received substantial custodial sentences. A sentence of at least 178 months in this case is reasonable and warranted in order to avoid creating sentencing disparities across comparable terrorism cases. Section 3553(a)(6) is concerned with national disparities "among the many defendants with similar criminal backgrounds convicted of similar criminal conduct." *United States v. Simmons*, 501 F.3d 620 (6th Cir. 2007), citing *United States v. Poynter*, 495 F.3d 349, 351-56 (6th Cir. 2007); *United States v. LaSalle*, 948 F.2d 215, 218 (6th Cir. 1991); *United States v. Parker*, 912 F.2d 156, 158 (6th Cir. 1990). *See also United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018) ("§ 3553(a)(6) concerns national disparities within a class of similar defendants, not disparities between one defendant and another . . . . The district court was free to focus on the risks and

15

circumstances of the defendant in front of him, not the one sentenced by another judge.") (internal citation omitted). The Sixth Circuit has recognized that "[a] district judge [ ] may exercise his or her discretion and determine a defendant's sentence in light of a co-defendant's sentence." *Simmons*, 501 F.3d at 624, *citing United States v. Nelson*, 918 F.2d 1268, 1272-73 (6th Cir. 1990). "That action, however, would be a discretionary one because the district court is not required to consider that type of disparity under § 3553(a)(6)." *Id.*, citing *LaSalle*, 948 F.2d at 218; *accord Parker*, 462 F.3d at 277 ("[A]lthough § 3553 does not require district court's to consider sentencing disparities among co-defendants, it does not prohibit them from doing so.").

### D. A Sentence of at Least 178 Months is Necessary to Afford Adequate Deterrence and to Promote Respect for the Law.

The Government's recommended sentence is necessary in order to adequately deter criminal conduct – in this case, terrorism aimed at harming Americans and American interests – and to promote the law prohibiting such destructive conduct. 18 U.S.C. § 3553(a)(2)(A)-(B). "In no area can the need for adequate deterrence be greater than in terrorism cases, with their potential for devastating loss of innocent life." *United States v. Stewart*, 590 F.3d 93, 181 (2d Cir. 2009) (Walker, J. concurring).

The capacity of a terrorist organization like ISIS to thrive hinges in large part on his ability to grow its membership – to attract, indoctrinate, and enlist new followers, like Defendant – who are committed to advancing and serving ISIS' murderous agenda or die trying. It is only through this support that ISIS and other

16

terrorist groups are able to fulfill their missions of hate, murder, and violence. Deterring such conduct is particularly important in today's environment, when so many young people in the West, including in the United States, have become radicalized by jihadist propaganda online and have either traveled or tried to travel to the Middle East to join ISIS and other terrorist groups.

It is vital for our country's national security that other men and women who reside in the Western District of Michigan and elsewhere, when exposed to hateful extremist teaching, be deterred from choosing to follow to path similar to that of Defendant and his co-defendants and engaging in potentially devastating conduct in support of such groups. It is important for those contemplating joining a terrorist organization to know that the consequences for such conduct are serious. And it is important for the public to know that those who seek to join and support terrorist organizations will face serious punishment preventing them from causing harm to society. A lengthy prison sentence is necessary and warranted in this case to serve the pressing need for general deterrence of such terrorism offenses.

## CONCLUSION

For the forgoing reasons, the Government seeks a sentence of at least 178 months in prison and a lifetime of supervised release for Defendant Muse Abdikadir Muse.

                                                Respectfully submitted,

                                                ANDREW BYERLY BIRGE
                                                United States Attorney

Dated: August 3, 2021                  /s/ *Clay M. West*
                                                /s/ *Christopher M. O'Connor*
                                                Assistant United States Attorneys

                                                United States Attorney's Office
                                                P.O. Box 208
                                                Grand Rapids, Michigan 49501-0208
                                                (616) 456-2404
                                                clay.m.west@usdoj.gov
                                                christopher.oconnor@usdoj.gov