UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,
                                    Case No. 19-cr-00025
                                    Hon. GORDON J. QUIST
vs.

MUSE ABDIKADIR MUSE,

                    Defendant.
_____/

CLAY M. WEST
U.S. Attorney (Grand Rapids)
The Law Bldg.
330 Ionia Ave., NW
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404
Email: Clay.M.West@usdoj.gov

CHRISTOPHER M. O'CONNOR
U.S. Attorney (Grand Rapids)
The Law Bldg.
330 Ionia Ave., NW
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404
Email: Christopher.OConnor@usdoj.gov

SANFORD A. SCHULMAN
Lead Attorney for Defendant:
        MUSE ABDIKADIR MUSE
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
(313) 963-4740
Email: saschulman@comcast.net

1

SOLOMON RADNER
Co-Counsel for Defendant
    MUSE ABDIKADIR MUSE
26700 Lahser Rd; Ste 400
Southfield, MI 48033
248-291-9712
866-571-1020 (fax)
solomonradner@gmail.com
_____/

## **DEFENDANT, MUSE ABKIDADIR MUSE'S SENTENCING MEMORANDUM**

NOW COMES the Defendant, MUSE ABDIKADIR MUSE, by and through his attorney, SANFORD A. SCHULMAN, and states in support of his Sentencing Memorandum as for a departure from the advisory guidelines as follows:

A. <u>Nature and Circumstances of Reyad Abbas's Offense and His History and Characteristics</u>

The defendant, MUSE ABDIKADIR MUSE, tendered a plea of guilty to Conspiracy to Provide Material Support to a Designated Foreign Terrorist Organization in violation of 18 USC Sec. 2339B(a)(1). The defendant, MUSE ABDIKADIR MUSE, was the first of the defendants to plead guilty and the first to cooperate.

The case as described by the Government focused on the dates commencing January, 2017 when Muse was barely 18 years old having been born on January 14, 1999. The defendant's actions, design and plan were as immature as his age and his conduct as unsophisticated as his

2

maturity.  Muse Muse with no prior military or ballistic training, association with any known terrorist operatives or even real plan, published his intent to join ISIS on an open Facebook account.  He would then plan to travel to Somalia without any knowledge of the country, without any contacts and without even knowing the language.  He had no resources to travel and met someone he had no prior contacts in a mall and received $1200 for a ticket to Somalia.  That individual, of course, was an FBI agent without whose help Muse would never have been able to purchase the plane ticket.

When Muse was at the airport he was arrested.  It is unknown where he would have gone in Somalia, if he would ever have been able to join ISIS as he intended or whether he himself would have been captured and possibly harmed.  Unfortunately, real terrorists often do not get caught. This ill fitted plan if not criminal, might almost be comical.  It only demonstrates how immature then 18 year old Muse was and how much since then he has matured.

The guidelines are draconian with 38 offense level points.  This court should consider the nature of the offense of course and the defendant's personal characteristics but also several additional factors including the fact that Muse, the first to plea without any motions, has been in the Newyago County Jail for over 2 and ½ years.  It is hard to find a single defendant

3

who has been in a county jail that long, without any programs, educational opportunities, etc.  He will certainly get credit for the time he has served, and should, but this court can consider that each day of the county is not the same as a prison and he has done this time without knowing his final sentence and has experienced the anxiety associated with that.

In addition, this court should consider that Muse Muse's plea has induced the other defendants, his family members, to plea.  If this court is to consider deterrence, it should also consider inducement.   The co-defendants pled in great part because they knew Muse had already pled and that he had publicly revealed his willingness to testify in open court against his own family.

These factors, the years that he has grown up in jail, his early and full acceptance of responsibility, his strong and sincere denunciation of his actions, his full and early cooperation against his family and his actions and not simply in words to improve his life and to be committed to improving himself are all significant reasons for this court to substantially deviate from the advisory guidelines.

The conviction in and of itself will have long lasting and significant collateral consequences for Muse.  If he was 60 year old physician or engineer or accountant, the conviction would have little effect on his career or future.  In this case the conviction is a life offense.  It has already impacted his education and career choice and will continue to have rippling effects.  An additional custodial sentence will not further satisfy the 3553(a) factors and a sentence of probation would be sufficient and is not barred by the statute. 18 USC Sec. 3561(c)(1).  The Government recommendation for a sentence of 178 months despite all that Muse has done (and did not do) is excessive.  This court must impose a sentence that is sufficient but not greater than necessary.

A.   **Nature and Circumstances of Muse Muse's Personal History and Characteristics**

As this Court is aware, the factors to be considered by a court at sentencing are by now well established.  *See* 18 U.S.C. § 3553(a); United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008).   This court must look not at the nature and circumstance of the offense but also the defendant's particular characteristics.

In this case, Muse Muse did not possess any weapons or participate in any assaultive conduct. His messages on the open facebook did claim to have strong anti-American sentiment, however, individuals who actually committed physical acts of violence against the United States in storming the US Capital Nearly half were charged only with misdemeanors and Paul A. Hodgkins, the first insurrectionist convicted of a felony to be sentenced for his crime of storming the Capitol on January 6, received an eight-month sentence to federal prison.

While this Court must still correctly calculate the guideline range, <u>Gall v. United States</u>, 552 U.S. 38, 49 (2007), it may not treat that range as mandatory or presumptive, id. at 51; <u>Nelson v. United States</u>, 555 U.S. 350, 352 (2009), but must treat it as "one factor among several" to be considered in imposing an appropriate sentence under § 3553(a). <u>Kimbrough v United States</u>, 552 U.S. 85, 90 (2007). The Court must "consider all of the § 3553(a) factors," "make an individualized assessment based on the facts presented," id. at 49-50, and explain how the facts relate to the purposes of sentencing. Id. at 53-60; <u>Pepper v. United States</u>, 131 S. Ct. 1229, 124243 (2011). The Court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." Id. at 101; <u>Pepper,</u> 131 S. Ct. at 1242-43.

A key component of Supreme Court law, designed to ensure that the guidelines are truly advisory and constitutional, is the authority of this Court to disagree with a guideline as a matter of policy. Because "the Guidelines are now advisory . . . , as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." Kimbrough, 552 U.S. at 101-02 (internal punctuation omitted) (citing Rita v. United States, 551 U.S. 338, 351 (2007) (district courts may find that the "Guidelines sentence itself fails properly to reflect § 3553(a) considerations"). As the Supreme Court held in Kimbrough, because "the cocaine Guidelines, like all other Guidelines, are advisory only," it "would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." Kimbrough, 552 U.S. at 91, 109-10; see also Spears v. United States, 555 U.S. 261, 267 (2009) ("[D]istrict courts are entitled to vary from the crack cocaine Guidelines in a mine-run case where there are no 'particular circumstances' that would otherwise justify a variance from the Guidelines' sentencing range.").

Congressionally directed guidelines are just as advisory as any other guideline and therefore equally subject to policy-based variances. In Vazquez v. United States, 130 S. Ct. 1135 (2010), the Supreme Court remanded for reconsideration in light of then-Solicitor General Kagan's position that "all guidelines," including congressionally-directed guidelines, "are advisory, and the very essence of an advisory guideline is that a sentencing court may, subject to appellate review for reasonableness, disagree with the guideline in imposing sentencing under Section 3553(a)." U.S. Br. at 11, Vazquez v. United States, No. 09-5370 (Nov. 2009). As the Sixth Circuit has previously recognized, "all of the sentencing guidelines are advisory," including those directed by Congress. United States v. Michael, 576 F.3d 323, 327 (6th Cir. 2009) (emphasis in original). Congressional directives "tell[] the Sentencing Commission, not the courts, what to do," and "a directive that the Commission specify a particular Guidelines range is not a mandate that sentencing courts stay within it." Id. at 328.

The instant offense involved Muse Muse, then a teenager, with no prior felony arrests or convictions, no prior misdemeanor arrests or convictions and no other arrests of any sort. He was born in Kenya and has 11 brothers and sisters and he recently relocated to Lansing from

Omaha.  He graduated form Eastern High School in Lansing and was
enrolled and attending classes at Lansing Community College.

.    B.    **Need for Adequate Deterrence, 18 U.S.C. § 3553(a)(2)(B)**

The empirical evidence is unanimous that there is no relationship
between sentence length and general or specific deterrence, regardless of
the type of crime.  See Andrew von Hirsch et al., Criminal Deterrence and
Sentence Severity: An Analysis of Recent Research (1999) (concluding
that "correlations between sentence severity and crime rates . . . were not
sufficient to achieve statistical significance," and that "the studies reviewed
do not provide a basis for inferring that increasing the severity of sentences
generally is capable of enhancing deterrent effects"); Michael Tonry,
Purposes and Functions of Sentencing, 34 Crime and Justice: A Review of
Research 2829 (2006) ("[I]ncreases in severity of punishments do not yield
significant (if any) marginal deterrent effects. . . . Three National Academy
of Science panels, all appointed by Republican presidents, reached that
conclusion, as has every major survey of the evidence."); David Weisburd
et al., Specific Deterrence in a Sample of Offenders Convicted of White-
Collar Crimes, 33 Criminology 587 (1995) (finding no difference in
deterrence for white collar offenders between probation and imprisonment);
Donald P. Green & Daniel Winik, Using Random Judge Assignments to

Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders, 48 Criminology 357 (2010) (study of over a thousand offenders whose sentences varied substantially in prison time and probation found that such variations "have no detectable effect on rates of re-arrest," and that "[t]hose assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time frame").

The Sentencing Commission has found that "[t]here is no correlation between recidivism and guidelines' offense level. . . . While surprising at first glance, this finding should be expected.  The guidelines' offense level is not intended or designed to predict recidivism."  U.S. Sent'g Comm'n, Measuring Recidivism:  The Criminal History Computation of the Federal Sentencing Guidelines, at 15 (2004) ["U.S. Sent'g Comm'n, Measuring Recidivism"].  See also Part IV.A.3, infra.  And according to "the best available evidence, . . . prisons do not reduce recidivism more than noncustodial sanctions."  Francis T. Cullen et al., Prisons Do Not Reduce Recidivism:  The High Cost of Ignoring Science, 91 Prison J. 48S, 50S-51S (2011).

A prison sentence in the case at bar will not further serve the purposes envisioned in the 3553(a) factors.  The Government suggests that Muse is still young enough to commit similar acts in the future.  That, of course, is ridiculous and is completely contrary to everything Muse has done since his arrest to prove suggestion false.  Indeed, it would have been Muse Muse as the Government's star witness had the co-defendants proceeded to trial.  They certainly had faith in him to believe he was truthful and trustworthy when they listed him as their main witness after numerous lengthy proffers.

Muse will be forever a convicted felon and a felon involving fraud. His ability to further his education, obtain gainful employment will be impaired.  It already has.  Moreover, his status in the community has been tarnished.  Anyone who meets Muse and learns of his story will surely be deterred.  Prison will add little to the deterrence.  The sentence will continue long after even probation is completed and the publicity will certainly only make it more difficult in every aspect of his life moving forward.

C.   **Need for Incapacitation**, 18 U.S.C. § 3553(a)(2)(C)

Muse Muse's age, strong family support, his conduct while in jail (no tickets or citations), full and timely acceptance of responsibility, his desire to return to school and to seek and maintain employment and his maturity since being charged strongly support the conclusion that he is most unlikely to re-offend.

II.   The Requested Sentence Avoids Unwarranted Disparities and Unwarranted Similarities.

This Court must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  Whether any difference among sentences is warranted or unwarranted depends on the individual circumstances of each case and their relationship to the purposes of sentencing.  "Unwarranted disparity is defined as different treatment of individual offenders who are similar in relevant ways, or similar treatment of individual offenders who differ in characteristics that are relevant to the purposes of sentencing."  U.S. Sent'g Comm'n, Fifteen Years of Guidelines Sentencing:  An Assessment of How Well the Federal Criminal Justice System Is Achieving the Goals of Sentencing Reform 113 (2004).

The guideline calculation gives heavy weight to factors based on assumptions about the seriousness of the offense and general deterrence that are unfounded in general and particularly in this case.  The guideline range fails to take into account any of Mr. Muse's characteristics demonstrating that there is no need for a custodial sentence to protect the public

In this case, a substantial variance is justified given the totality of the circumstances, Muse's conduct since his arrest, his maturity since being charged and the significant and substantial collateral consequences of his conviction.  He has shown that this is very much an isolated event and a chapter in his life that he has entirely closed.

III.    <u>The Sentence Requested Meets the Purposes of Sentencing Under the Circumstances in this Case and Is Consistent with Recent Sixth Circuit Law.</u>

This Court is required to consider "the kinds of sentences available" by statute.  18 U.S.C. § 3553(a)(3).  Congress has provided that there is no mandatory minimum and a non-custodial sentence is not prohibited under the statue or even the guidelines.

Attached are letters that the defense would ask this court to consider from individuals who have known Muse for years and have a deep personal perspective on his character and his potential.

13

## **CONCLUSION**

For the reasons stated, Muse Muse respectfully requests a sentence of 60 months.  Mr. Muse will have a federal conviction that he will not be able to expunge, he will be on supervised release for a period of time and required to pay a fine and restitution.  Mr. Muse committed a violation of federal law that is an isolated act in his otherwise exemplary life.  He is an intelligent young man who has matured.  A lengthy custodial sentence will serve no purpose.

Respectfully submitted,


/s/ Sanford A. Schulman
SANFORD A. SCHULMAN
Attorney for Defendant:
    MUSE ABDIKADIR MUSE
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
(313) 963-4740
Email: saschulman@comcast.net

Date: August 3, 2021